Daniel Humberto CHAVEZ–
PEREZ, Petitioner,

v.

John ASHCROFT, Attorney
General, Respondent.

No. 02–72422.

United States Court of Appeals,
Ninth Circuit.

Submitted July 15, 2004 *.

Filed Oct. 27, 2004.

* The panel unanimously finds this case suitable for decision without oral argument. Fed. R.App. P. 34(a)(2).

James Todd Bennett, El Cerrito, CA, for the petitioner.

Carolyn M. Piccotti, Office of Immigration Litigation, U.S. Department of Justice, Civil Division, Washington, D.C., for the respondent.

Before REAVLEY,** W. FLETCHER, and TALLMAN, Circuit Judges.

Opinion by Judge TALLMAN; Dissent by Judge WILLIAM A. FLETCHER

TALLMAN, Circuit Judge.

The petitioner is an alien who was convicted in Oregon of first-time simple drug possession. Though this conviction might be expunged from his record sometime in the future pursuant to Oregon's rehabilitative statute, he has not yet qualified for this relief, and so the Immigration and Naturalization Service (INS)[1] ordered him

** The Honorable Thomas M. Reavley, Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

1. On March 1, 2003, the Department of Justice transferred the INS's functions to the Bureau of Border Security and the Bureau of Immigration and Citizenship Services. *See* Homeland Security Act of 2002, Pub.L. No. 107–296, § 471, 116 Stat. 2135 (Nov. 25, 2002). For ease of reference, we refer to the relevant agency as the INS.

removed as an alien convicted of a felony controlled substance offense. We must decide whether this removal order violates Chavez–Perez's rights under the Equal Protection Clause. Because at the time his deportation order was upheld Chavez–Perez had suffered a judgment of conviction for a drug offense, we conclude that the INS has a rational basis for treating him differently from those aliens whose convictions have previously been expunged, or whose charges were deferred and later dismissed. We uphold the decision of the Board of Immigration Appeals (BIA) and dismiss the petition for review.

## I

Daniel Chavez–Perez is a native and citizen of Mexico who entered the United States in 1991 as a lawful permanent resident. On July 18, 2001, at age nineteen, he was convicted of possession of methamphetamine and sentenced to 20 days in jail, 36 months of probation, and various monetary penalties. Less than a month later, the INS served him with a Notice to Appear and charged him with removability as an alien convicted of a controlled substance crime. See 8 U.S.C. § 1227(a)(2)(B)(i). Chavez–Perez applied for cancellation of removal, arguing before the Immigration Judge (IJ) that his conviction fell within the ambit of Or.Rev.Stat. § 137.225(1)(a), an Oregon rehabilitative statute that allows for possible expungement of the conviction from his record sometime in the future.[2] Relying on our decision in *Lujan–Armendariz v. INS*, 222 F.3d 728 (9th Cir.2000), Chavez–Perez argued that his conviction was the functional equivalent of those federal convictions that qualify for expungement under the Federal First Of-

fender Act (FFOA), 18 U.S.C. § 3607. He asserted that the Equal Protection Clause forbids his removal based on a comparable state conviction that was subject to future expungement at the time of the INS's order, and claimed that he did not stand "convicted" of a drug offense for purposes of immigration law. The IJ disagreed, found Chavez–Perez removable as charged, denied his application for cancellation of removal, and ordered him removed from the United States.

In an unpublished, non-precedential opinion, a divided BIA affirmed. A majority of the Board members concluded that "unless and until [Chavez–Perez's] conviction is eventually dismissed pursuant to [Oregon's expungement statute, he] stands 'convicted' under the immigration laws and is removable based on that conviction." Dissenting, Board Member Espenoza would have held that the relevant rule for determining FFOA treatment "does not have a temporal limitation" and that the possible future expungement of Chavez–Perez's conviction should preclude his removal. Chavez–Perez filed a timely petition for review of the BIA's decision.

## II

Section 1252(a)(2)(C) of the Immigration and Nationality Act (INA), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), *see* Pub.L. No. 104–208, § 306(a), 110 Stat. 3009 (Sept. 30, 1996), significantly limits appellate review of orders of removal. The section states:

Notwithstanding any other provision of law, no court shall have jurisdiction to

**2.** Possession of methamphetamine is a Class C felony in Oregon because the drug is listed as a Schedule II controlled substance. *See* Or.Rev.Stat. § 475.992(4)(b) (classes of felonies); Or. Admin. R. 855–080–0022(3)(b)

(controlled substance schedules). Oregon's expungement statute permits Class C felony convictions to be set aside if offenders meet all necessary criteria. Or.Rev.Stat. § 137.225(5)(a).

review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in ... 8 U.S.C. [§ 1227(a)(2)(B) (controlled substance offenses)]....

8 U.S.C. § 1252(a)(2)(C). Section 1227(a)(2)(B)(i) provides that an alien convicted of a violation of any state or federal law relating to a controlled substance (except possession of small amounts of marijuana for personal use) may be removed. 8 U.S.C. § 1227(a)(2)(B)(i).

 However, we retain "jurisdiction to determine whether jurisdiction exists," *Aragon–Ayon v. INS*, 206 F.3d 847, 849 (9th Cir.2000); that is, we must determine whether Chavez–Perez is (1) an alien (2) who is removable (3) by reason of having committed a controlled substance or other specified offense. *See Flores–Miramontes v. INS*, 212 F.3d 1133, 1135 (9th Cir.2000). There is no dispute that Chavez–Perez is an alien or that he committed a controlled substance offense under Oregon law for which he stands convicted. The only question we must decide is whether he is "removable" on the basis of that conviction, and thus our assessment of our jurisdiction "collapses into the merits." *See Ye v. INS*, 214 F.3d 1128, 1131 (9th Cir.2000). This is a question of law that we review de novo. *Coronado–Durazo v. INS*, 123 F.3d 1322, 1324 (9th Cir.1997). Chavez–Perez's argu-

ment is based on an application of the Equal Protection Clause, which is also subject to de novo review. *See Kankamalage v. INS*, 335 F.3d 858, 861 (9th Cir.2003).

### III

The INS may remove any alien who, at any time after admission to this country, is convicted of a state or federal controlled substance violation. 8 U.S.C. § 1227(a)(2)(B)(i). Chavez–Perez claims to fall within an exception to that rule, and thus we first sketch a brief history of how that exception has changed over the years, how it interacts with various state expungement statutes, and how it is currently applied in the Ninth Circuit.

Pursuant to a 1959 decision by the Attorney General, aliens could not avoid deportation simply because a state conviction had been expunged. *See Matter of A— F—*, 8 I. & N. Dec. 429, 445–46 (1959). This rule changed in 1970 when Congress passed the FFOA, a federal rehabilitative statute. Offenders qualify for relief under the FFOA if they meet three criteria: they must be found guilty of possession of a controlled substance, they must not have previously benefitted from the FFOA, and it must be their first violation of state or federal drug laws. 18 U.S.C. §§ 3607(a)(1) and (2).[3] If an offender qualifies, relief consists of one year of probation during which time the charge is deferred. If the

---

**3.** The FFOA provides in relevant part:

(a) If a person found guilty of an offense described in section 404 of the Controlled Substances Act (21 U.S.C. 844)—

(1) has not, prior to the commission of such offense, been convicted of violating a Federal or State law relating to controlled substances; and

(2) has not previously been the subject of a disposition under this subsection;

the court may ... place him on probation for a term of not more than one year without entering a judgment of conviction. At any time before the expiration of the term

of probation, if the person has not violated a condition of his probation, the court may, without entering a judgment of conviction, dismiss the proceedings against the person and discharge him from probation....

(b) ... A disposition under subsection (a) ... shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose.

18 U.S.C. § 3607; *see also* 21 U.S.C. § 844(a) (providing penalties for simple possession).

offender does not violate any conditions of probation during that year, the sentencing court dismisses the proceedings and discharges the offender from probation without entering a judgment of conviction. *Id.* § 3607(a). The FFOA was designed to permit courts to sentence defendants "in a manner that prevents [them] from suffering *any* disability imposed by law on account of the finding of guilt. Under the Act, the finding of guilt is expunged and no legal consequences may be imposed as a result of the defendant's having committed the offense." *Lujan–Armendariz,* 222 F.3d at 735 (emphasis in original). The FFOA thus operates as a type of "deferred adjudication" law, in which a finding of guilt is made and later erased, but no formal judgment of conviction is ever entered. *Id.* at 735 n. 11. Many states have also enacted rehabilitative statutes, and some operate in a similar fashion as the FFOA.

Oregon's expungement statute is an example of a different type, known as a "set-aside" or "vacatur" law. *See id.* Under Oregon's statute, when a defendant is found or pleads guilty the court enters a formal judgment of conviction. At any time after three years from the date of that criminal judgment, a defendant who has fully complied with and performed his sentence may apply to the court for an order setting aside the conviction. Or. Rev.Stat. § 137.225(1)(a).[4]

After the FFOA was enacted, the BIA held that a drug offense that had been expunged under the FFOA—or a state law "counterpart" to the FFOA—was not a conviction for immigration purposes and could not serve as a basis for deportation. *Matter of Werk,* 16 I. & N. Dec. 234, 236 (BIA 1977). The BIA defined a state law "counterpart" of the federal act to be a state rehabilitative statute that was not broader in scope than the FFOA. *See Matter of Deris,* 20 I. & N. Dec. 5, 10 (BIA 1989).

We rejected this narrow approach in *Garberding v. INS,* 30 F.3d 1187, 1190 (9th Cir.1994). *Garberding* involved Montana's expungement statute, which was not limited to first-time simple drug possession offenses but allowed expungement of a broad range of more serious offenses. *Id.* at 1189. Considering Garberding's challenge on Equal Protection grounds, we concluded that the INS had no rational basis for treating her differently simply because Montana's statute covered a broader range of offenses than did the FFOA, *id.* at 1190–91, and held that "persons who received the benefit of a state expungement law were *not* subject to deportation as long as they *could* have received the benefit of the federal Act if they had been prosecuted under federal law." *Lujan–Armendariz,* 222 F.3d at 738 (emphasis in original); *see also Paredes–Urrestarazu v. INS,* 36 F.3d 801, 811–12 (9th Cir.1994) (establishing the corollary rule that persons found guilty under state law who would *not* have qualified under the FFOA were *not* entitled to receive favorable immigration treatment, even if they did qualify for expungement under state law).

The BIA subsequently adopted *Garberding* and *Paredes–Urrestarazu* in *In re Manrique,* 21 I. & N. Dec. 58, 64 (BIA

---

4. Or.Rev.Stat. § 137.225(1)(a), entitled "Order setting aside conviction or record of arrest," provides:

At any time after the lapse of three years from the date of pronouncement of judgment, any defendant who has fully complied with and performed the sentence of the court and whose conviction is described in subsection (5) of this section by motion may apply to the court wherein that conviction was entered for entry of an order setting aside the conviction[.]

1995), and set forth four criteria aliens had to meet to demonstrate that they could have been eligible for relief under the FFOA:

1. The alien is a first offender, i.e., he has not previously been convicted of violating any federal or state law relating to controlled substances.

2. The alien has pled to or been found guilty of the offense of simple possession of a controlled substance.

3. The alien has not previously been accorded first offender treatment under any law.

4. The court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation.

21 I. & N. Dec. at 64.[5] Chavez–Perez does not meet the fourth criterion because his Oregon criminal proceeding was not deferred.

After this federal common-law rule was finally settled, Congress enacted the IIRIRA in 1996 and provided for the first time a statutory definition of "conviction":

The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—

(i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted to sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

8 U.S.C. § 1101(a)(48)(A); *see also Matter of Ozkok,* 19 I. & N. Dec. 546, 551–52 (BIA 1988) (setting forth a three-part test whose first two prongs Congress adopted as §§ 1101(a)(48)(A)(i) and (ii)). The BIA concluded that this new statutory definition of a "conviction" superceded the INS's practice of not deporting those aliens whose offenses were expunged under state law and who could have qualified for first offender treatment under the FFOA. *In re Roldan–Santoyo,* 22 I. & N. Dec. 512, 527–28 (BIA 1999).

We disagreed. In *Lujan–Armendariz,* we reversed *Roldan–Santoyo* in part and held that the IIRIRA's new definition of conviction did not repeal or alter the FFOA's protection against removal in deportation proceedings. 222 F.3d at 743–48. Instead, we concluded that the FFOA remained as a narrow exception to IIRIRA's new definition of "conviction," as did the rule that expungement of a conviction pursuant to a state rehabilitative statute where the offender met the FFOA's requirements could not serve as a basis for deportation. *Id.* at 749.[6] By maintaining

---

5. At least two courts have concluded that, in addition to these general criteria, aliens sentenced in state court to terms of probation exceeding one year would not have been eligible for relief under the FFOA. *See Vasquez–Velezmoro v. INS,* 281 F.3d 693, 697–98 (8th Cir.2002); *Fernandez–Bernal v. Atty. Gen. of the United States,* 257 F.3d 1304, 1316–17 (11th Cir.2001).

6. Other courts of appeals have declined to follow *Lujan–Armendariz. See Acosta v. Ashcroft,* 341 F.3d 218, 225–26 (3d Cir.2003)

(rejecting "the narrow interpretation of [§ 1101(a)(48)(A)] advanced by the Court in *Lujan–Armendariz* [.]"); *Gill v. Ashcroft,* 335 F.3d 574, 579 (7th Cir.2003) ("The holding of *Lujan–Armendariz,* which elevates an abandoned administrative practice over a statutory text, is untenable, and we decline to follow it."); *see also Vasquez–Velezmoro v. INS,* 281 F.3d 693, 696–99 (8th Cir.2002) (discussing but not deciding the issue). Even the BIA refuses to apply *Lujan–Armendariz* in cases that arise in states outside this circuit's jurisdiction. *In re Salazar–Regino,* 23 I. & N. Dec.

this exception, we thus reaffirmed the requirement in *Garberding* and *Paredes–Urrestarazu* that, as a matter of constitutional equal protection, the benefits of the FFOA exception be extended to aliens whose offenses are expunged under state law, provided they would have been eligible for relief under the FFOA had they been prosecuted for federal crimes. *Id.*

We also emphasized that "relief does not depend upon whether or not the state rehabilitative statute in question is best understood as allowing for 'vacaturs,' 'set-asides,' 'deferred adjudications,' or some other procedure." *Id.* at 738 n. 18. Rather, the rule in this circuit is that aliens found guilty of first-time simple possession crimes under state law can still avoid deportation if they could have received relief under the FFOA and do obtain relief under a state rehabilitation statute. *Id.*

We have since extended the *Lujan–Armendariz* exception to aliens whose state convictions were expunged while their appeals were pending before the BIA, *Cardenas–Uriarte v. INS*, 227 F.3d 1132 (9th Cir.2000) (remanding for a determination of whether the alien met the FFOA's other eligibility criteria), and those whose convictions were expunged under the laws of a foreign country, *Dillingham v. INS*, 267 F.3d 996 (9th Cir.2001).

## IV

■ This appeal raises an issue of first impression in our circuit. Given our deci-

sions in *Garberding, Paredes–Urrestarazu,* and *Lujan–Armendariz,* may the INS order the removal of an alien whose conviction *might* be erased sometime in the future? Here, Chavez–Perez had not received relief under a state rehabilitation statute at the time of the INS's order of removal or the subsequent administrative proceedings before the BIA. He may seek to have his conviction expunged if he complies with the terms of his probation for three years,[7] but at the time of the BIA's decision it was clearly an otherwise valid felony drug conviction remaining on his criminal history record.

We first identified a similar dilemma in a footnote in *Lujan–Armendariz,* noting that it remained an open question "whether the Act precludes deportation of an alien who has received a deferred adjudication but has not yet had his proceedings expunged because he has not completed his term of probation and therefore has not yet satisfied a judge that dismissal of the offense is warranted." *Id.* at 746 n. 28. We opined that our "review of the history and purpose of the Act strongly suggests that such a person is protected by the Act's provisions, and our analysis of the law regarding repeals by implication suggests that no implied repeal occurred in that respect either." *Id.* However, we did not need to reach the issue because the state courts' findings of guilt had already been expunged before the BIA's decisions had been issued. *Id.*

223, 235 (BIA 2002) ("[E]xcept in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under section 101(a)(48)(A) of the [INA].").

7. The Circuit Court of the State of Oregon for Jackson County entered its judgment of conviction and sentence on July 18, 2001. Oregon's expungement statute permits defendants to apply for expungement after three years from the date of judgment have passed.

Those three years recently expired on July 18, 2004, and if Chavez–Perez complied with the conditions of his probation during those years he may have already sought and received an order setting aside his conviction. Whether or not this is the case, we may not consider any information beyond what the BIA had before it at the time of its decision. *See Velarde v. INS*, 140 F.3d 1305, 1309 (9th Cir.1998) ("Review [of the BIA's decision] is limited to the administrative record.").

Here, we decide an issue that is slightly different from that raised in *Lujan–Armendariz*, which contemplates a situation where the state's rehabilitation statute has already been applied to the alien, whereas Chavez–Perez has not received the benefit of Oregon's rehabilitation statute at all. This is a distinction that makes a difference. *Garberding* and *Lujan–Armendariz* extend the FFOA exception only to those who "would have been eligible for relief under the federal law *and in fact received* relief under state law." 222 F.3d at 738, n. 18 (emphasis added). *Manrique's* fourth prong requires that "[t]he court *has* entered an order pursuant to a state rehabilitative statute" for the exception to apply. *Manrique*, 21 I. & N. Dec. at 64 (emphasis added). Chavez–Perez does not meet that prong.

Unlike the *Lujan–Armendariz* court, we discern nothing in the history and purpose of either the IIRIRA or the FFOA that "strongly suggests" that persons whose convictions are entered on their records and have not yet been expunged should avoid removal merely because they may be entitled to seek expungement later.[8] Neither of these Acts, nor their respective legislative histories, say anything at all about the matter.

In every one of our previous discussions of this exception, we were faced with aliens whose state or foreign convictions had already been expunged. *See Garberding*, 30 F.3d at 1188; *Paredes–Urrestarazu*, 36 F.3d at 805; *Lujan–Armendariz*, 222 F.3d at 733; *Cardenas–Uriarte*, 227 F.3d at 1135; *Dillingham*, 267 F.3d at 1001. In *Dillingham*, we held that "equal protection considerations prohibit the government from treating differently aliens who have committed identical offenses *and have had their convictions expunged*, simply because of the origin of the statute under which they were lawfully rehabilitated." 267 F.3d at 1006–07 (emphasis added).

Though our prior formulations of this test clearly presume that the alien's conviction has already been expunged, Chavez–Perez draws our attention to the slightly different wording used by the BIA in *Manrique* and cited by this court in *Cardenas–Uriarte*. In *Manrique*, the BIA implemented our *Garberding* decision with a test whose fourth prong requires that a "court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been *or will be* dismissed after probation." 21 I. & N. Dec. at 64 (emphasis added).

It is not clear that the fourth prong of the *Manrique* test has been adopted in this Circuit, at least in its entirety. We applied that part of the fourth prong that is consistent with our precedent in both *Lujan–Armendariz* and in *Cardenas–Uriarte*. *See Lujan–Armendariz*, 222 F.3d at 738, n. 18 (concluding that the BIA erred in holding that an alien who completed his probation and had the proceedings

---

8. When discussing the history and legal development of the first time offender exception, the *Lujan–Armendariz* court recognized that prior precedent dealt only with aliens whose finding of guilt had been expunged. 222 F.3d at 734 ("Courts have long dealt with the problem of what effect to give, for immigration and other purposes, to a finding of guilt that *has been expunged* under a state rehabilitation statute." (emphasis added)). With the exception of the dicta in footnote 28 of *Lujan–*

*Armendariz*, no Ninth Circuit panel has addressed the question of whether the first time offender exception applies to an alien who must still await the successful completion of his probation before he is eligible to have his record cleared (either through dismissal or vacatur). If Chavez–Perez does not successfully finish his term of probation, he will not be eligible for expungement under Oregon law and his conviction will remain on the record as it now stands.

against him dismissed did not meet the fourth prong of *Manrique* ); *Cardenas–Uriarte,* 227 F.3d at 1136 (same). However, we have never adopted the "will be dismissed" language of *Manrique's* fourth prong, and it is not consistent with our precedent. *See supra,* n. 8.

Leaving aside the question of whether we adopted the fourth prong of the *Manrique* test, Chavez–Perez does not meet its requirements. To show that he would have qualified for relief under the FFOA applying the *Manrique* test, Chavez–Perez would have to prove that an Oregon court had "entered an order pursuant to a state rehabilitative statute under which [his] criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or will be dismissed after probation." *Manrique,* 21 I. & N. Dec. at 64.[9] The administrative record contains no such court order, and no showing has been made that Chavez–Perez's proceedings "*will* be dismissed after probation." [10] We can merely speculate that Chavez–Perez *might* complete probation successfully, that he *might* petition an Oregon court for expungement, and that a court *might* grant that relief. In our view, this is not sufficient to warrant the conclusion that he *will* be afforded expungement under Oregon law.

This conclusion does not end our inquiry. We must still decide whether Chavez–Perez's removal, even though it may be permissible under *Manrique,* is nevertheless a violation of his rights under the Equal Protection Clause. *See Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (holding that aliens are entitled to equal protection of the law). As a lawful permanent resident, Chavez–Perez is not a member of a suspect class. Because "[f]ederal authority in the areas of immigration and naturalization is plenary," *Garberding,* 30 F.3d at 1190 (citation omitted), federal classifications based on alienage are subject to relaxed judicial scrutiny. *Id.* The government's different treatment of groups of aliens must be upheld unless it is "wholly irrational." *Id.*

Chavez–Perez contends that he is being treated differently from those aliens whose convictions have already been expunged. True enough. He is being removed, while they may not. We readily discern a rational basis for this distinction. Unlike the aliens in *Garberding, Manrique,* and *Lujan–Armendariz,* Chavez–Perez's conviction may never be expunged. It would defy common sense to require the INS to sit on its hands for three years, waiting to see whether Chavez–Perez will comply with the terms of his probation and per-

---

**9.** The dissent wishes us to give meaning to the first "or" in this prong, but not to the second. We think that the only reasonable interpretation of *Manrique's* fourth prong is that it requires 1) a court order deferring proceedings pending probation, 2) a court order dismissing proceedings, or 3) a court order that proceedings will be dismissed after probation.

**10.** It is the absence of a court order that distinguishes Chavez–Perez from the hypothetical discussed in footnote 28 of *Lujan–Armendariz,* and from the conundrum Judge Fletcher discusses in his dissent. Judge Fletcher argues that requiring an alien to demonstrate that the charges against him "will be dismissed" requires the impossible.

But the *Manrique* language requires that "the court has entered an order ... under which the alien's criminal proceedings ... will be dismissed after probation." 21 I. & N. Dec. 58. Chavez–Perez does not have a court order at all, so he does not meet this fourth *Manrique* prong. Judge Fletcher's dilemma might be a problem for the hypothetical alien in the *Lujan–Armendariz* footnote, and might be a reason for this Court not to adopt the "will be dismissed" language in *Manrique,* but it is not the issue for Chavez–Perez. We see no constitutional violation in treating him differently when he has not qualified for expungement and may never do so.

haps qualify for future expungement. The agency has a legitimate, rational need to proceed with removals based on the information that exists at the time. When the INS charged Chavez–Perez with removability, he unquestionably had suffered a conviction on his record that supported his removal. We cannot conclude that the government's treatment of Chavez–Perez is "wholly irrational."

To paraphrase our colleague Judge Fernandez, equal protection simply does not require the extension of case law that Chavez–Perez urges us to make: from recognition of FFOA expungements, to recognition of similar state statutes, to recognition of all state statutes, and, finally, to recognition of speculative and hypothetical state expungements that have not yet occurred. *See Dillingham,* 267 F.3d at 1013 (Fernandez, J., dissenting).

We express no opinion about whether this reasoning would apply with equal force to the situation the *Lujan–Armendariz* court specifically identified, where an alien has a finding of guilt on his record but the actual conviction is deferred pending successful completion of probation. *See* 222 F.3d at 746 n. 28 (referring to "deferred adjudication" statutes). Aliens sentenced under such schemes do not have a "conviction" on their record at any time during probation. However, because we are not faced with that situation here, that question must continue to remain open for another day.

## V

Chavez–Perez's rights under the Equal Protection Clause are not violated by the order of removal. As an alien with a conviction on his record he may lawfully be removed, even though those aliens whose convictions have already been expunged may not. Because Chavez–Perez stands convicted of a controlled substance viola-tion for which he may be removed, we lack jurisdiction to review his petition under 8 U.S.C. § 1252(a)(2)(C).

**PETITION DISMISSED.**

WILLIAM A. FLETCHER, Circuit Judge, dissenting:

The majority today holds that an alien whose state drug conviction is eligible for expungement under a state rehabilitative statute, but whose conviction has not yet been expunged, is not afforded the protection extended to aliens who have been sentenced under the Federal First Offender Act. Because I believe the majority misunderstands and misapplies our precedent, I respectfully dissent.

Petitioner Daniel Chavez–Perez is a first time drug offender. On July 18, 2001, when he was nineteen years old, he was convicted of possession of methamphetamine, a Class C felony under Oregon law. He was sentenced to 20 days in jail, 36 months on probation, and monetary penalties. Because Chavez–Perez was convicted of a Class C felony, he was eligible for expungement of his conviction at any time more than three years after the judgment of conviction, provided that he had "fully complied with and performed the sentence of the court." Or.Rev.Stat. § 137.225(1)(a), (5)(a). When the INS commenced removal proceedings against him, Chavez–Perez was not yet eligible for expungement of his conviction because three years had not elapsed from the date of his conviction. More than three years have now elapsed, but the present record is silent as to whether he has "fully complied with and performed the sentence of the court."

As a general rule, aliens whose convictions have been expunged are still subject to removal based upon their expunged convictions. That is, a "conviction" remains a

"conviction" for purposes of 8 U.S.C. § 1227(a)(2) regardless of whether and when it has been expunged. *See Ramirez–Castro v. INS*, 287 F.3d 1172, 1174 (9th Cir.2002). However, the Federal First Offender Act ("FFOA"), 18 U.S.C. § 3607, contains an exception to this general rule. The FFOA is a "deferred adjudication" statute under which no judgment of conviction is entered if a convicted first offender complies with the terms of his probation. The FFOA "allows the court to sentence the defendant in a manner that prevents him from suffering *any* disability imposed by law on account of the finding of guilt." *Lujan–Armendariz v. INS*, 222 F.3d 728, 735 (9th Cir.2000) (emphasis in original). If an alien is convicted under the FFOA but no judgment is ever entered because of successful completion of probation, the alien may not be removed under 8 U.S.C. § 1227(a)(2).

In *Garberding v. INS*, 30 F.3d 1187 (9th Cir.1994), we held that the deportation of an alien whose drug conviction had been expunged under a state rehabilitative statute violated the Equal Protection Clause. The Montana state statute under which Garberding had been convicted differed in some respects from the FFOA. We held that the Equal Protection Clause required us to inquire into whether Garberding would have been eligible for relief under the FFOA if he had been convicted under that statute. That is, we held in *Garberding* that the proper inquiry centered on what the alien had done, not on the peculiarities of the state statute under which he or she had been convicted and was entitled to expungement. *See id.* at 1191 ("Garberding had the bad luck or poor judgment to possess her marijuana in Montana.... It is this fortuitous circumstance, not Garberding's conduct, which the INS used to distinguish her for deportation.... [D]istinguishing Garberding for deportation because of the breadth of Montana's ex-

pungement statute, not because of what she did, has no logical relation to the fair administration of the immigration laws ...."). "Thus, under *Garberding*, persons who received the benefit of a state expungement law were *not* subject to deportation as long as they *could* have received the benefit of the federal Act if they had been prosecuted under federal law." *Lujan–Armendariz*, 222 F.3d at 738 (emphasis in original).

The Board of Immigration Appeals ("BIA") implemented our holding in *Garberding* in *Matter of Manrique*, 21 I. & N. Dec. 58 (BIA 1995). In *Manrique*, the BIA established four criteria for determining which aliens must be given the protection of the FFOA:

[T]he policy of leniency in immigration proceedings shown to aliens subject to treatment under [the FFOA] will be extended to aliens prosecuted under state law who establish the following criteria:

1. The alien is a first offender, i.e., he has not previously been convicted of violating any federal or state law relating to controlled substances.

2. The alien has pled to or been found guilty of the offense of simple possession of a controlled substance.

3. The alien has not previously been accorded first offender treatment under any law.

4. The court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or *will be dismissed* after probation.

*Id.* at 64 (emphasis added). Note particularly the fourth criterion and its italicized language. Under *Manrique*, an alien is entitled to the protection of the FFOA not only if the criminal proceedings have been

deferred after probation, as in a deferred adjudication statute such as the FFOA, but also if such proceedings *will be dismissed* after probation, as in an expungement statute such as the Oregon statute in this case. Chavez–Perez comes within the italicized language, for his criminal proceedings will be dismissed only after successful completion of probation.

In *Lujan–Armendariz*, we held that even after Congress had enacted a statutory definition of the term "conviction" in the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), 8 U.S.C. § 1101(a)(48)(A), "the rule we declared to be constitutionally required [in *Garberding*, which] was formally adopted by the BIA in *Matter of Manrique* [,]" continued to govern in first offender expungement cases. 222 F.3d at 738. That is, "in simple drug possession cases any alien 'who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of [the FFOA] had he been prosecuted under federal law.'" *Id.* (quoting *Manrique*, 21 I. & N. Dec. at 64). In *Lujan–Armendariz*, we specifically referred to the fourth criterion of *Manrique*. We wrote, "Under [*Manrique*], an alien qualifies for relief if he is a first offender, is guilty only of simple possession, has not previously been accorded first offender treatment, and '[t]he court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation *or* the proceedings have been or *will be dismissed* after probation." 222 F.3d at 738 n. 18 (quoting *Manrique*, 21 I. & N. Dec. at 64) (first emphasis in original, second emphasis added).

Following *Lujan–Armendariz*, we explicitly applied *Manrique's* fourth criterion in *Cardenas–Uriarte v. INS*, 227 F.3d 1132 (9th Cir.2000), to determine if an alien qualified for the protection extended by *Garberding*. Citing *Manrique*, we wrote, "To qualify for first offender treatment under federal law, a person must show that … the court has entered an order pursuant to a state rehabilitative statute under which the criminal proceedings have been deferred pending successful completion of probation or the proceedings have been or *will be dismissed* after probation." *Id.* at 1136 (emphasis added). We held that "Cardenas's expungement meets the fourth prong of the *Manrique* test, and the BIA erred in concluding otherwise." *Id.*

The majority tries to escape *Manrique's* fourth criterion, and our adoption of that criterion in *Lujan–Armendariz* and *Cardenas–Uriarte*, in two ways. First, it contends that we have not adopted the relevant part of *Manrique's* fourth criterion. It writes, "It is not clear that the fourth prong of the *Manrique* test has been adopted in this Circuit, *at least in its entirety*." Maj. Op. at 1291 (emphasis added). Second, it contends that even if *Manrique's* fourth criterion is applicable, I have misread it. I can understand why the majority wants to believe that we have not adopted all of *Manrique's* fourth criterion, or that I have misread that criterion, for this is the only way it can escape the precedential force of our prior holdings. But the majority is wrong. I consider the majority's contentions in turn.

First, as shown by the language just quoted from *Lujan–Armendariz* and *Cardenas–Uriarte*, we have indeed adopted *Manrique's* fourth criterion "in its entirety." In both *Lujan–Armendariz* and *Cardenas–Uriarte*, we quoted all of *Manrique's* fourth criterion. *Lujan–Armendariz*, 222 F.3d at 738 n. 18; *Cardenas–Uriarte*, 227 F.3d at 1136. In *Lujan–Armendariz*, we adopted and applied that

criterion. Having already adopted the criterion in *Lujan–Armendariz*, we applied it again in *Cardenas–Uriarte*. We have not, before this case, had occasion to apply *Manrique's* fourth criterion to a case where the criminal proceedings "will be dismissed" (as distinct from "have been deferred" and "have been ... dismissed"). But the majority is clearly wrong in saying that we have not adopted the criterion "in its entirety."

Second, the majority contends that I wish to "give meaning to the first 'or' in this prong [*i.e.*, in *Manrique's* fourth criterion], but not to the second." Maj. Op. at 1292 n. 9. I confess that I do not understand what the majority means. The operation of *Manrique's* fourth criterion is quite straightforward. I quote it in its entirety:

> 4. [1] The court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation *or* [2] the proceedings have been *or* will be dismissed after probation.

*Manrique*, 21 I. & N. Dec. at 64 (bracketed numbers and emphasis added). The two alternative parts of the fourth criterion, indicated by the bracketed numbers and separated by the first "or," take into account the two kinds of statutes under which the criterion may be satisfied. The first is a deferred adjudication statute, in which no judgment is entered pending successful completion of probation. The second is an expungement statute under which judgment is entered, but is expunged when and if probation is successfully completed. In turn, the expungement statute part of the criterion can be satisfied in two ways, as indicated by the second "or." Either the proceedings have already been dismissed, or they "will be

dismissed" after successful completion of probation.

The majority misquotes, and therefore misreads, *Manrique's* fourth criterion. Purporting to quote *Manrique*, it writes, "But the *Manrique* language requires that 'the court has entered an order ... under which the alien's criminal proceedings ... will be dismissed after probation.'" Maj. Op. at 1292 n. 10. The majority has omitted significant parts of the text of the fourth criterion, as may be seen by comparing the majority's quotation with the full criterion, quoted above. The language "the court has entered an order" applies to a deferred adjudication statute. However, by omitting some of the text of the fourth criterion, the majority makes it appear that this language applies to an expungement statute as well. Only by selectively quoting from *Manrique's* fourth criterion can the majority conclude that a court order is necessary under an expungement statute. We made it very clear in *Lujan–Armendariz* that a court order is not necessary under an expungement statute. As we stated in *Lujan–Armendariz*, an alien can satisfy *Manrique's* fourth criterion by showing that "[t]he court has entered an order pursuant to a state rehabilitative statute under which the alien's criminal proceedings have been deferred pending successful completion of probation *or* the proceedings have been or will be dismissed after probation." 222 F.3d at 738 n. 18 (emphasis in original). By selective quotation, the majority both misstates *Manrique's* fourth criterion, and disregards our prior precedent construing that very language.

Whether an alien attempts to meet *Manrique's* fourth criterion by demonstrating the existence of a court order *or* by proving that the proceedings "have been or will be dismissed after probation" depends on the type of state rehabilitative provision involved. A court order, while a necessary part of a deferred adjudication

scheme, is not required when "the proceedings have been or will be dismissed after probation" pursuant to an expungement statute. Indeed, requiring an existing court order under an expungement scheme turns *Manrique's* "will be dismissed" language into nonsense. Under Oregon's expungement statute, for example, Chavez–Perez could not even apply for a court order setting aside his conviction until three years had elapsed from the date of judgment. Or.Rev.Stat. § 137.225(1)(a).

The majority concludes that Chavez–Perez is not entitled to relief because three years had not elapsed since the date of his conviction when the Immigration Judge and the BIA acted. There is some common sense to the majority's position, for if we apply *Manrique's* fourth criterion as it is written, the INS cannot complete removal proceedings against Chavez–Perez until the probationary period has elapsed. I acknowledge that waiting through Chavez–Perez's probationary period will be inconvenient. But we have already crossed that bridge. Under current law, we refuse to allow immediate removal when an alien has been convicted under a "deferred adjudication" statute. Under such a statute—including the FFOA, the gold standard to which we compare all state expungement statutes—the court (and the INS) must wait to see if probation is successfully completed. *See* 18 U.S.C. § 3607(a); *see also, e.g., Lujan–Armendariz*, 222 F.3d at 738 n. 18. Waiting to see whether an alien successfully completes probation under a deferred adjudication statute, or whether an alien does so under an expungement statute, is the same. In either case, the INS must wait.

In writing the fourth criterion in *Manrique*, the BIA knew exactly what it was doing. Under our holding in *Garberding*, the BIA was required to treat first offenders convicted under state statutes in the

same way they would have been treated if they had been convicted under the FFOA. Because a conviction is not entered as a judgment under the FFOA unless an alien fails to comply with the terms of his probation, the INS must wait to see whether the alien has complied with the terms of probation. The BIA therefore carefully specified in *Manrique's* fourth criterion that the INS must wait, not only if criminal proceedings "have been deferred" pending successful completion of probation, but also if proceedings "will be dismissed" pending successful completion. Adding the "will be dismissed" clause to the second part of the fourth criterion was the only way the BIA could give the same treatment to convictions under state expungement statutes as to convictions under the FFOA. Thus, far from being an accident or slip of the pen, the "will be dismissed" language of the second part of *Manrique's* fourth criterion is an essential part of the BIA's compliance with *Garberding*.

We held in *Garberding* that first-time offenders convicted under state expungement statutes must be given the same treatment they would have received under the FFOA. That is, we held that they must be treated as if they have been convicted under a "deferred adjudication" statute under which the court has to wait to see whether the conditions of probation were fulfilled before entering a judgment of conviction. In selectively quoting from *Manrique's* fourth criterion, and in ignoring *Manrique's* "will be dismissed" language, the majority disregards the rationale of our holding in *Garberding* and subverts our holdings in *Lujan–Armendariz* and *Cardenas–Uriarte*.

I therefore respectfully dissent.