**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOEL RAMIREZ-ALTAMIRANO,
                    *Petitioner,*

v.

ERIC H. HOLDER, JR.,* Attorney
General,

                    *Respondent.*

No. 06-71445

Agency No.
A92-949-620

ORDER AND
AMENDED
OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 5, 2008—Pasadena, California

Filed February 4, 2009
Amended April 14, 2009

Before: Kim McLane Wardlaw and Sandra S. Ikuta,
Circuit Judges, and Jeremy D. Fogel,** District Judge.

Opinion by Judge Wardlaw;
Dissent by Judge Ikuta

---

*Eric H. Holder, Jr., is substituted for his predecessor, Michael B. Mukasey, as Attorney General of the United States. Fed. R.App. P. 43(c)(2).

**The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

## COUNSEL

Kevin A. Bove, Escondido, California, for petitioner Joel Ramirez-Altamirano.

Ronald LeFevre, Office of the District Counsel, Department of Homeland Security, San Francisco, California; Saul Greenstein, Holly M. Smith, and Linda S. Wendtland, Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, D.C., for respondent Attorney General Holder.

## ORDER

The opinion filed February 4, 2009, and published at 554 F.3d 786 (9th Cir. 2009) is superseded by the amended opinion below.

With these amendments, the panel has voted to deny as moot the petition for panel rehearing filed on March 20, 2009. No further petitions for rehearing shall be entertained.

## OPINION

WARDLAW, Circuit Judge:

Joel Ramirez-Altamirano petitions for review of the denial of his application for cancellation of removal. The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") both found that Ramirez-Altamirano's prior state conviction for possession of drug paraphernalia rendered him ineligible for relief, even though the conviction had been set aside under state law. Because the IJ and BIA erred in treating the set-aside conviction as an absolute bar to relief, we grant the petition and remand for further proceedings.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

Ramirez-Altamirano was born in Mexico on September 25, 1967. He first entered the United States without inspection in April 1985, when he was seventeen. He claims to have resided in the United States continuously since then, although he admits to returning to Mexico occasionally during that time period.

In May 2004, the Department of Homeland Security served Ramirez-Altamirano with a Notice to Appear before an IJ for removal proceedings. Before the IJ, Ramirez-Altamirano conceded that he had entered the country most recently in September 2000, and that he had done so illegally. He informed the IJ, however, that he would seek cancellation of removal under 8 U.S.C. § 1229b(b), and, in the alternative, post-conclusion voluntary departure under 8 U.S.C. § 1229c.

At a hearing in August 2004, the IJ asked Ramirez-Altamirano's attorney whether he foresaw any potential bars to relief. In response, the attorney mentioned that, in 1993, Ramirez-Altamirano had been convicted of misdemeanor possession of drug paraphernalia under California Health and Safety Code section 11364. Ramirez-Altamirano had served five days in jail for the offense.[1] His attorney noted, however, that Ramirez-Altamirano was seeking expungement of the conviction in state court.

On October 19, 2004, Ramirez-Altamirano succeeded in obtaining relief under a California rehabilitative statute. A state court found that "good cause" existed to order the con-

---

[1]Section 11364 makes it "unlawful to possess an opium pipe or any device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking" certain controlled substances. Cal. Health & Safety Code § 11364(a). As applied to section 11364, "drug paraphernalia" means "all equipment, products and materials of any kind which are designed for use or marketed for use, in [injecting or smoking the relevant controlled substances]." *Id.* § 11014.5(a).

viction set aside, the guilty plea withdrawn, a plea of "not guilty" entered, and the charge dismissed. The court further ordered that Ramirez-Altamirano be "released from all penalties and disabilities" resulting from the conviction, except that he would not be relieved of his obligation to disclose the conviction "in response to any direct question contained in any questionnaire or application for public office, for licensure by any state [or] local agency, or for contracting with the California State Lottery."

When Ramirez-Altamirano returned to Immigration Court in April 2005, the IJ considered whether the set-aside conviction affected his claim for cancellation of removal. Under 8 U.S.C. § 1229b(b)(1)(C), cancellation of removal is not available to nonpermanent residents who have been convicted of a controlled substance offense. Ramirez-Altamirano's attorney argued, however, that because the conviction had been expunged under state law, it no longer precluded immigration relief. In support, he cited our opinion in *Lujan-Armendariz v. INS*, 222 F.3d 728 (9th Cir. 2000), which held that federal drug convictions expunged under the Federal First Offender Act ("FFOA"), 18 U.S.C. § 3607, could not be used for immigration purposes, 222 F.3d at 749-50, and that "no rational basis exists . . . for denying relief to identically situated aliens who qualify for similar treatment under state expungement laws," *id.* at 743 n.24.

The IJ rejected Ramirez-Altamirano's argument, determining that the conviction retained its immigration consequences despite having been set aside in state court. The IJ found that the conviction could be used against Ramirez-Altamirano for immigration purposes because, by the terms of the state court's order, it retained certain consequences under state law —specifically, the requirement to disclose the conviction upon request when applying "for public office, for licensure by any state or local agency, or for contracting with the California State Lottery." The IJ also explained that Ramirez-Altamirano's "reliance on *Lujan-Armendariz* [was] mis-

placed," because that case involved "the crime of simple possession of a controlled substance" for which one could receive relief under the FFOA, 18 U.S.C. § 3607. The IJ concluded that Ramirez-Altamirano's conviction was "different, in [that] it is for possession of drug paraphernalia."

That Ramirez-Altamirano's conviction retained its immigration consequences had "two profound impacts on his eligibility for cancellation of removal." First, the conviction precluded relief under 8 U.S.C. § 1229b(b)(1)(C), which limits cancellation of removal to those nonpermanent residents who have not been convicted of a controlled substance offense. Second, the conviction served as a "stop-time event," terminating (in a virtual sense) Ramirez-Altamirano's "physical presence" in the United States. Because the conviction occurred in 1993, eight years after his initial entry in 1985, Ramirez-Altamirano could not demonstrate the ten years of continuous physical presence required by 8 U.S.C. § 1229b(b)(1)(A) for eligibility for cancellation of removal. The IJ therefore denied Ramirez-Altamirano's application.[2]

On appeal, the BIA adopted and affirmed the IJ's denial of Ramirez-Altamirano's application for cancellation of removal. The Board agreed that the 1993 conviction "rendered [Ramirez-Altamirano] ineligible for cancellation of removal." It concluded that the IJ did not err "in finding that [Ramirez-Altamirano] failed to meet his burden of proving that his expunged controlled substances conviction no longer qualified as a conviction for immigration purposes." The BIA also agreed that the conviction, which occurred "less than 10 years after [Ramirez-Altamirano] first entered the United States," "precluded him from accruing the period of continuous physical presence required for cancellation of removal."

---

[2]The IJ suggested that there might be other problems with Ramirez-Altamirano's application, but he declined to reach any of those issues because he found the drug paraphernalia conviction dispositive.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 8 U.S.C. § 1252(a)(2)(D) to review the BIA's determination that a controlled substance conviction precludes immigration relief as a matter of law. *See de Jesus Melendez v. Gonzales*, 503 F.3d 1019, 1023 (9th Cir. 2007).

We review the BIA's legal determinations de novo. *See Aguiluz-Arellano v. Gonzales*, 446 F.3d 980, 983 (9th Cir. 2006). When, as here, the BIA adopts a portion of the IJ's decision, we review that portion of the IJ's decision as if it were the BIA's. *See Molina-Estrada v. INS*, 293 F.3d 1089, 1093 (9th Cir. 2002). Our review is limited to the actual grounds relied upon by the BIA. *Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004). "If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case." *Id.*

## III. DISCUSSION

The IJ held, and the BIA summarily agreed, that Ramirez-Altamirano's prior conviction for possession of drug paraphernalia rendered him ineligible for cancellation of removal, even though the conviction had been set aside through a state rehabilitative statute. The IJ acknowledged that, under our decision in *Lujan-Armendariz*, 222 F.3d 728, certain expunged state drug convictions cannot be treated as "convictions" for immigration purposes. Yet, the IJ held that *Lujan-Armendariz* did not apply for two reasons: (1) Ramirez-Altamirano's conviction was for possession of drug paraphernalia as opposed to possession of drugs; and (2) under the terms of the state court's set-aside order, Ramirez-Altamirano was required to disclose the conviction on certain state-specific questionnaires and applications. We conclude that neither of these grounds supports the IJ's conclusion that

Ramirez-Altamirano's conviction retained its immigration consequences.

## A. The Immigration Consequences of Expunged State Convictions

A nonpermanent resident seeking cancellation of removal must meet four threshold requirements. 8 U.S.C. § 1229b(b)(1). Specifically, the alien must:

> (A) [have] been physically present in the United States for a continuous period of not less than 10 years immediately preceding the date of such application;
>
> (B) [have] been a person of good moral character during such period;
>
> (C) [have] not been convicted of an offense [that would render the alien inadmissible under 8 U.S.C. § 1182(a)(2), or deportable under 8 U.S.C. § 1227(a)(2)-(3)], subject to [certain exceptions for victims of domestic violence]; and
>
> (D) establish[ ] that removal would result in exceptional and extremely unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or alien lawfully admitted for permanent residence.

*Id.* In analyzing the first requirement, "any period of . . . continuous physical presence in the United States shall be deemed to end . . . when the alien has committed an offense" referred to in 8 U.S.C. § 1182(a)(2) that renders the alien inadmissible under that provision, or removable under 8 U.S.C. § 1227(a)(2) or (a)(4). *Id.* § 1229b(d)(1). Under § 1182(a)(2), an alien convicted of a crime "relating to a controlled substance" is deemed inadmissible, subject to certain

exceptions for youthful offenders or minor offenses. *Id.* § 1182(a)(2)(i), (ii). Therefore, a prior drug conviction theoretically can affect a nonpermanent resident's eligibility for cancellation of removal in either of two ways: (1) It can render the alien directly ineligible under § 1229b(b)(1)(C); and (2) it can terminate the alien's "continuous physical presence," thereby precluding eligibility under § 1229b(b)(1)(A) and § 1229b(d)(1). *But see Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1202-03 (9th Cir. 2006) (holding that the stop-time rule of § 1229b(d)(1) does not apply retroactively to crimes before 1996).

[1] Ramirez-Altamirano argues that his prior conviction for possession of drug paraphernalia does not render him ineligible for relief because the California court set aside the conviction pursuant to a state rehabilitative statute.[3] The BIA has

---

[3]Many jurisdictions, including California, have adopted rehabilitative statutes to reduce the long-term impact of criminal convictions on individuals who subsequently demonstrate a period of good behavior following their adjudication. *See Lujan-Armendariz*, 222 F.3d at 734-35. These take several forms:

> In some types, which we will refer to as "vacatur" or "set-aside" laws, a formal judgment of conviction is entered after a finding of guilt, but then is erased after the defendant has served a period of probation or imprisonment and his conviction is ordered dismissed by the judge. . . . In other types, which we will refer to as "deferred adjudication" laws, no formal judgment of conviction or guilt is ever entered. Instead, after the defendant pleads or is found guilty, entry of conviction is deferred, and then during or after a period of good behavior, the charges are dismissed and the judge orders the defendant discharged.

*Id.* at 734 n.11. The primary effect of any of these statutes is to remove the legal consequences of a conviction. Many of the statutes, however, still allow or require disclosure of the conviction in certain circumstances, *see, e.g.*, Mont. Code Ann. § 46-18-204 (2007) (allowing "public access to the [records and data relating to the dismissed charge] . . . by district court order upon good cause shown"), while others go further and expunge not only the conviction but also the entire arrest, *see* 18 U.S.C. § 3607(c) (providing a special, enhanced provision for youthful offenders). For simplicity, we generally use the term "expungement" to describe the effect, even when it is to some extent a misnomer. *Lujan-Armendariz*, 222 F.3d at 734 n.11.

followed a general rule that "[f]or immigration purposes, a person continues to stand convicted of an offense notwithstanding a later expungement under a state's rehabilitative statute." *Ramirez-Castro v. INS*, 287 F.3d 1172, 1174 (9th Cir. 2002). Although we have explained that the BIA's interpretation is only one of many plausible readings of our immigration laws, we have generally deferred to the BIA's rule when considering the effect of expunged state convictions. *See id.*; *Murillo-Espinoza v. INS*, 261 F.3d 771, 774 (9th Cir. 2001).

**[2]** However, although state rehabilitative statutes generally do not strip a conviction of its immigration consequences, the federal rehabilitative statute known as the Federal First Offender Act does. The FFOA provides relief for first-time defendants found guilty of drug possession. 18 U.S.C. § 3607. If the defendant has not previously been convicted of a federal or state controlled substance offense and has not previously been a beneficiary of the FFOA, the court may place him on probation without entering a judgment of conviction. *Id.* § 3607(a). At the end of the probation term, if the defendant has not violated any of the conditions of probation, the court will dismiss the proceedings and discharge the defendant without entering a judgment of conviction. *Id.* Moreover, if the defendant was less than twenty-one years old at the time of the offense, the court not only will dismiss the charges, but also will expunge all references to the arrest itself from most official records. *Id.* § 3607(c).[4] Because nothing indicates that Congress intended to create an immigration-based exception to the FFOA, we have held that deferred convictions may not be treated as "convictions" for immigration purposes when

---

[4]The FFOA therefore provides two distinct forms of relief—one available for all defendants, and the other available only for those who were less than twenty-one years old at the time of the offense. *See In re Manrique*, 21 I. & N. Dec. 58, 61 n.4 (BIA 1995) ("[T]he expungement provisions of 18 U.S.C. § 3607(c) . . . are separate from and in addition to the requirements for dismissal of the proceedings of a first offender under § 3607(a).").

the proceedings are later dismissed under the FFOA. *See Lujan-Armendariz*, 222 F.3d at 743-49; *see also Garberding v. INS*, 30 F.3d 1187, 1189-91 (9th Cir. 1994).

**[3]** Given that the FFOA provides immigration relief for first-time defendants found guilty of drug possession in federal court, the Equal Protection Clause requires a parallel exception for similarly situated defendants prosecuted in state court. *Lujan-Armendariz*, 222 F.3d at 749; *Paredes-Urrestarazu v. INS*, 36 F.3d 801, 811-12 (9th Cir. 1994); *Garberding*, 30 F.3d at 1191. We have held that there is no rational basis for denying immigration relief based on the mere happenstance that the individual was prosecuted by the state rather than by the federal government. *See Lujan-Armendariz*, 222 F.3d at 743 n.24. We also have found no rational basis for denying immigration relief merely because a state rehabilitative statute's procedural and structural details differed from those of the FFOA. *See id.* at 738 n.18 ("[T]he critical question is not the nature of the state's expungement statute but rather what [the petitioner] did." (second alteration in original) (internal quotation marks omitted)); *Garberding*, 30 F.3d at 1190-91. Instead, the Equal Protection Clause requires that the immigration benefits of the FFOA be extended to those individuals granted relief under state rehabilitative statutes who "would have been eligible for relief under the [FFOA] had their offenses been prosecuted as federal crimes." *Lujan-Armendariz*, 222 F.3d at 749.[5]

---

[5]Contrary to the assertion of the dissent, our approach in *Lujan-Armendariz* is entirely consistent with our recent en banc decision in *Abebe v. Mukasey*, No. 05-76201, 2009 WL 50120 (9th Cir. Jan. 5, 2009) (en banc) (per curiam). None of the statutory provisions before us in *Lujan-Armendariz* was at issue in *Abebe*. *See id.* at *1-*2 (addressing whether the petitioner was eligible for a discretionary waiver of deportation under former Immigration and Nationality Act § 212(c), 8 U.S.C. § 1182(c) (repealed 1996)). Not surprisingly, therefore, we did not address *Lujan-Armendariz* or any of its progeny. The dissent nevertheless attempts to manufacture a conflict where none in fact exists by repeatedly quoting out of context two general statements from *Abebe*. *See* Dissent at 4278-79,

**[4]** Federal convictions deferred under the FFOA and state convictions expunged under the rationale of *Lujan-Armendariz* no longer qualify as convictions for immigration purposes. *See id.* at 742-43. Therefore, if Ramirez-Altamirano's set-aside conviction is considered expunged under *Lujan-Armendariz*, both grounds upon which the IJ denied Ramirez-Altamirano's application are invalid. First, the conviction will not directly preclude eligibility for cancellation for removal under 8 U.S.C. § 1229b(b)(1)(C). Second, the conviction will not terminate Ramirez-Altamirano's "continuous physical presence" under 8 U.S.C. § 1229b(b)(1)(A) and § 1229b(d)(1).[6] *See, e.g.*, *In re Mandigma*, No. A43 022

---

4286-87. Neither statement undermines our decision in *Lujan-Armendariz* or here. First, the dissent quotes *Abebe* for the unremarkable proposition that " 'Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens.' " *Id.* at 4278 (quoting *Abebe*, 2009 WL 50120, at *2). The extensive discussion of congressional intent in *Lujan-Armendariz* demonstrates our awareness of these "broad and sweeping powers." *See, e.g.*, 222 F.3d at 736-37, 742, 745. Second, the dissent relies on *Abebe*'s articulation of the rational basis test (which is consistent with the Supreme Court's articulation), to support its argument that "we [must] revisit *Lujan-Armendariz*." Dissent at 4279. However, both *Lujan-Armendariz* and this opinion employ the very test quoted by the dissent. That the dissent simply disagrees with the unanimous three-judge panel's *application* of this test in *Lujan-Armendariz* is hardly a reason for revisiting a decision that has been good law in our circuit for almost a decade.

The out-of-circuit cases cited by the dissent also fail to provide a reason for revisiting *Lujan-Armendariz*. *See id.* at 4277-78. While some of our sister circuits have reached different conclusions as to what constitutes a "conviction" for purposes of immigration law, we are nonetheless compelled to follow the well-reasoned conclusion in *Lujan-Armendariz*, as other panels of our court have done. *See, e.g.*, *Cardenas-Uriarte v. INS*, 227 F.3d 1132, 1136-37 (9th Cir. 2000).

[6]The dissent acknowledges that the BIA relied on only these two grounds in rejecting Ramirez-Altamirano's appeal, and that our review is limited to the grounds on which the BIA actually relied; yet, it neverthe-

132, 2008 WL 1734632 (BIA 2008) ("[T]he respondent's 1997 possession offense [expunged under *Lujan-Armendariz*] does not make him inadmissible to the United States under section 212(a)(2) of the Act, and the stop-time rule did not end the respondent's continuous residence . . . .").

## B. Possession of Drug Paraphernalia

**[5]** The IJ distinguished *Lujan-Armendariz* on the ground that Ramirez-Altamirano was convicted of possession of drug paraphernalia, while the FFOA applies to offenders charged only with possession of drugs. We rejected the identical argument in *Cardenas-Uriarte*, 227 F.3d at 1137. Because there is no rational basis for treating individuals found guilty of possessing drug paraphernalia more harshly than those found guilty of possessing the actual drugs themselves, we again reject this reason as a basis for denying Ramirez-Altamirano relief.

**[6]** In *Cardenas-Uriarte*, the petitioner originally was charged with two counts of possession of drugs but eventually pled guilty to the lesser offense of possession of drug paraphernalia. 227 F.3d at 1137. We noted that, on its face, the FFOA appears to cover only individuals found guilty of actual drug possession. *Id.* However, Congress had no need to

less proceeds to analyze an issue that the BIA did not even mention—whether an alien who receives a term of jail, as opposed to a term of probation, could have qualified for and received expungement of the offense under the FFOA. *See* Dissent at 4281-82. This issue has yet to be squarely addressed in our circuit, *see Lujan-Armendariz*, 222 F.3d at 738 n.18, and we are not bound to follow the decisions reached by a few of our sister circuits, *see* Dissent at 4281-82 (citing cases). In any event, because the BIA did not rely on the fact that Ramirez-Altamirano received a sentence of five days' imprisonment in rejecting his appeal, we do not reach the question left open in *Lujan-Armendariz*. *See Andia*, 359 F.3d at 1184 ("In reviewing the decision of the BIA, we consider only the grounds relied upon by that agency."). Instead, we remand to the BIA to consider this issue in the first instance.

include possession of drug paraphernalia explicitly under the FFOA because no federal statute made such possession a crime. *Id.* We held that possession of drug paraphernalia was implicitly included under the FFOA because to conclude otherwise "would frustrate congressional intent and lead to an absurd result." *Id.* Congress intended the FFOA to provide relief for first-time offenders convicted of the least serious drug offenses. *Id.* It would be an absurd result if a defendant found guilty of drug possession would qualify for FFOA relief, but one who pled guilty only to possession of drug paraphernalia would still be considered "convicted" of a controlled substance offense for immigration purposes. *Id.* Therefore, "[w]here possession of drug paraphernalia is a less serious offense than simple possession of a controlled substance . . . , congressional intent indicates that it should be included under the [FFOA]." *Id.*

That the reasoning in *Cardenas-Uriarte* applies squarely to the facts of this case is not disputed by our dissenting colleague. *See* Dissent at 4281. Ramirez-Altamirano originally was charged both with possession of drugs under California Heath and Safety Code section 11350 and possession of drug paraphernalia under section 11364 of the same code. Ramirez-Altamirano eventually pled guilty only to the drug paraphernalia charge, a misdemeanor under state law. *See* Cal. Health & Safety Code § 11364. If he had instead pled guilty to the more serious drug possession charge, Ramirez-Altamirano's conviction would have qualified him for relief under the FFOA. The structure of his plea agreement obviously was intended to *minimize* his culpability by allowing him to avoid facing the more serious drug possession charge, and reflects the state's view as to the seriousness of the offense. We can conceive of no rational basis for treating Ramirez-Altamirano more harshly than a federal defendant found guilty of possessing drugs who would be eligible for immigration relief under the FFOA.

[7] We acknowledged in *Cardenas-Uriarte* that a state statute criminalizing possession of drug paraphernalia could, in

theory, be more serious than one criminalizing simple drug possession. 227 F.3d at 1137 n.6. As an example, we imagined a statute that also criminalized "possession of the ingredients and machinery to create methamphetamine." *Id.* We continue to agree that, if such a statute exists, convictions thereunder might be meaningfully distinguished from the drug possession convictions eligible for relief under the FFOA exception. However, the California statute under which Ramirez-Altamirano was convicted does not raise such concerns. California Health and Safety Code section 11364 prohibits only the possession of a "device, contrivance, instrument, or paraphernalia used for unlawfully injecting or smoking" certain controlled substances. If Congress intended the FFOA to "permit[ ] first-time drug offenders who commit the least serious type of drug offense to avoid the drastic consequences" that follow from a criminal conviction, *Lujan-Armendariz*, 222 F.3d at 735, it would be absurd to deny relief to individuals who possess the utensils incidental to drug ingestion but grant relief to those who possess the actual illicit drugs. Therefore, under *Cardenas-Uriarte*, persons convicted for possession of drug paraphernalia under California Health and Safety Code section 11364 are eligible for the same immigration treatment as those convicted of drug possession under the FFOA, and the IJ erred as a matter of law by denying Ramirez-Altamirano's application for cancellation of removal on this ground.

## C. The Terms of Expungement under State Law

In the alternative, the IJ found that Ramirez-Altamirano's conviction was not expunged for immigration purposes because "[t]he [state court] order itself, by its plain language, shows that even for the State of California, the respondent has a conviction, at least for disclosing it for public office, for seeking a license by any State or local agency, and for even contracting with the California State lottery." Because "the critical question is not the nature of the state's expungement statute but rather what [the petitioner] did," *Lujan-*

*Armendariz*, 222 F.3d at 738 n.18 (alteration in original) (internal quotation marks omitted), we conclude that this was also an improper ground upon which to deny Ramirez-Altamirano relief.

We note that the title of the expungement order does not reflect the nature of the order itself. The state court order is entitled "ORDER DISMISSING ACCUSATION AGAINST PROBATIONER [PENAL CODE § 1203.4a]." This description is oxymoronic, because California Penal Code section 1203.4a applies only to defendants "not granted probation." Cal. Penal Code § 1203.4a(a). The similar expungement relief accorded to probationers is set forth in California Penal Code section 1203.4. Moreover, section 1203.4, unlike section 1203.4a, requires that the order state that it "does not relieve [the probationer] of the obligation to disclose the conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state or local agency, or for contracting with the California State Lottery." *Id.* § 1203.4(a). The state court's order recited this text nearly verbatim, suggesting that Ramirez-Altamirano actually was granted relief under section 1203.4 and the caption's description of the order misstates the applicable statute.

Under either statute, the set-aside conviction retains certain residual consequences under state law. Under California Vehicle Code section 13555, relief granted under either section 1203.4 or section 1203.4a will not reinstate a defendant's driving privileges if they were revoked or suspended as a result of the original conviction. For certain violent offenses, a defendant still may be prohibited from possessing or controlling a firearm after his conviction is dismissed under section 1203.4a. Cal. Penal Code § 12021.1(a). As described above, convictions set aside under section 1203.4 must be disclosed on certain questionnaires. Finally, under either statute, a prior set-aside conviction may be "pleaded and proved" if the defendant is prosecuted for another offense in the future. Cal. Penal Code §§ 1203.4, 1203.4a. Other than these narrow

exceptions, however, both statutes dictate that the defendant "be released from all penalties and disabilities resulting from the offense of which he or she has been convicted." *Id.* §§ 1203.4(a), 1203.4a(a).

[8] Although we have never addressed explicitly the extent to which a conviction must be "expunged" under state law before invoking the equal protection concerns articulated in *Lujan-Armendariz*, our analysis consistently has focused on whether aliens "would have been eligible for relief under the [FFOA] had their offenses been prosecuted as federal crimes," 222 F.3d at 749, rather than on the intricacies of the state rehabilitative statutes in question, *id.* at 738 n.18.

We first addressed the equal protection ramifications of the FFOA in *Garberding*, 30 F.3d 1187. At that time, the BIA had long acknowledged that an alien granted relief under the FFOA did not have a "conviction" for immigration purposes, and it similarly held that defendants granted relief under a state counterpart to the FFOA should be given the same treatment. *See Matter of Deris*, 20 I. & N. Dec. 5, 11 (BIA 1989); *Matter of Werk*, 16 I. & N. Dec. 234, 236-37 (BIA 1977) (concerning the predecessor statute to the current FFOA). However, in determining whether a state defendant was covered under this rule, the BIA generally focused on the procedural details of the state rehabilitative statute in question. In *Garberding*, for example, the BIA had concluded that Montana's rehabilitative statute was not a "state counterpart" to the FFOA because it applied to a broad range of offenses more serious than simple drug possession. 30 F.3d at 1189-90. We held that even if the statute in question was broader than the FFOA, there was no rational basis for denying Garberding relief because *her* state conviction for possession of marijuana would have qualified her for relief under the FFOA had it been brought federally. *Id.* at 1190-91. The immigration consequences of a set-aside conviction could not turn on whether it happened to occur in a state whose rehabilitation statute was an exact counterpart to the FFOA. *Id.* at 1191.

In our subsequent cases, we reiterated that "the relevant question is whether the person involved could have received relief under the [FFOA] and does receive relief under a state rehabilitative statute." *Lujan-Armendariz*, 222 F.3d at 738 n.18; *see also Cardenas-Uriarte*, 227 F.3d at 1136 ("If [the petitioner] would have been eligible for first offender treatment under federal law, he would not stand 'convicted' for purposes of the immigration laws."); *Dillingham v. INS*, 267 F.3d 996, 1006 (9th Cir. 2001) ("[T]he INS may not discriminate against aliens convicted of simple possession offenses whose subsequent conduct would have qualified them for FFOA rehabilitation, but for the fact that they were convicted and rehabilitated under the laws of another sovereign."). Similarly, when we have denied FFOA treatment to an alien convicted under state law, it has consistently been because the alien would *not* have been eligible for relief under the FFOA. In some cases, this was because the conviction itself fell outside the scope of the FFOA. *See, e.g.*, *de Jesus Melendez*, 503 F.3d at 1025-26 (concerning a second controlled substance conviction); *Aguiluz-Arellano*, 446 F.3d at 983-84 (same); *Ramirez-Castro*, 287 F.3d at 1175 (concerning a concealed weapon conviction).[7] In another case, it was because the alien

---

[7]The dissent's reliance on *Ramirez-Castro* is both misplaced and misleading. *See* Dissent at 4283-85. In *Ramirez-Castro*, the petitioner was found deportable by reason of his state court misdemeanor conviction for carrying a concealed weapon. 287 F.3d at 1173. After his conviction was expunged pursuant to California Penal Code section 1203.4, the petitioner filed a motion to reopen with the BIA, which was denied. *Id.* On appeal, the petitioner argued that the expungement of his conviction nullified it for purposes of immigration law. *Id.* at 1174. In rejecting this argument, we first determined the petitioner's firearms conviction was "not within the scope of the [FFOA]." *Id.* at 1175. Only *after* reaching this conclusion did we turn to the question of whether section 1203.4 could eliminate completely the immigration consequences of a state conviction, which we answered in the negative. *Id.* We reasoned that "[i]n view of the fact that California Penal Code section 1203.4(a) provides only a limited expungement even under state law, it is reasonable for the BIA to conclude that a conviction expunged under that provision remains a conviction for purposes of federal law." *Id.* What the dissent fails to make clear is that our

was not yet eligible for rehabilitative relief. *See Chavez-Perez v. Ashcroft*, 386 F.3d 1284, 1290-93 (9th Cir. 2004); *see also id.* at 1292-93 ("It would defy common sense to require the INS to sit on its hands for three years, waiting to see whether Chavez-Perez will comply with the terms of his probation and perhaps qualify for future expungement.").

Moreover, we frequently have found that equal protection principles required treating state drug possession convictions as "expunged" for immigration purposes even when the convictions retained certain consequences under state law. The Montana statute under which Garberding was granted relief specifically allows for "public access to the [records related to the dismissed charge] . . . by district court order upon good cause shown." Mont. Code Ann. § 46-18-204; *Garberding*, 30 F.3d at 1189. Similarly, both *Lujan-Armendariz* and *Cardenas-Uriarte* involved Arizona's rehabilitative statute, which contains exceptions similar to those in the California statute at issue here. The Arizona statute specifically exempts certain penalties and disabilities from release, including several imposed by the state's department of transportation and the state's game and fish commission. Ariz. Rev. Stat. § 13-907(C)(1)-(2) (2006). The statute also allows dismissed convictions to "be pleaded and proved in any subsequent prosecution . . . for any offense." *Id.* § 13-907(C)(1). *Cardenas-Uriarte* explicitly mentioned these exceptions, 227 F.3d at 1138, and *Lujan-Armendariz* similarly noted that the statute was "subject to some exceptions *not relevant here*," 222 F.3d at 733 n.6 (emphasis added).

**[9]** The dissent argues that *Garberding*, *Lujan-Armendariz*,

analysis of section 1203.4 was only relevant to whether it provided the petitioner an *independent* basis for treating his conviction as expunged. In other words, had the petitioner's conviction been within the scope of the FFOA, he would have been eligible for relief based on our holding in *Lujan-Armendariz*.

and *Cardenas-Uriarte* are "inapposite[ ] because in none of them did we consider or even mention the extent to which the state expungement scheme removed the consequences of a conviction." Dissent at 4285. The dissent's cramped reading of these cases is unpersuasive. We have repeatedly found that an individual can be considered to have "receive[d] relief under a state rehabilitative statute" even when the statute in question does not expunge a conviction for *all* purposes.[8] *Lujan-Armendariz*, 222 F.3d at 738 n.18. That we did not explicitly discuss the scope of the expungement statutes in these cases does not change the fact that we concluded *Lujan-Armendariz* applied notwithstanding the statutory exceptions. The dissent mischaracterizes our opinion in stating that "the majority[ ] suggest[s] that the scope of the relief provided by the state statute is irrelevant." Dissent at 4285. In finding that Ramirez-Altamirano's conviction was sufficiently expunged, we do not conclude that the exceptions contained in an expungement statute will never be relevant. Rather, we limit our analysis, as we must, to the statute before us, and hold that the few residual consequences contained in *this* statute do not alter Ramirez-Altamirano's eligibility for relief.

**[10]** We are thus bound to apply *Lujan-Armendariz*'s holding that "the relevant question is whether the person involved could have received relief under the [FFOA] and does receive relief under a state rehabilitative statute." 222 F.3d at 738 n.18. Accordingly, an alien cannot be deemed "convicted" for immigration purposes if he can demonstrate that (1) the conviction was his first offense; (2) he had not previously been accorded first offender treatment; (3) his conviction was for possession of drugs, or an equivalent or lesser charge such as possession of drug paraphernalia, *Cardenas-Uriarte*, 227 F.3d

---

[8]As we have already discussed, the statute at issue expunges a conviction for almost all purposes, save a few residual consequences under state law. *See* Cal. Penal Code §§ 1203.4, 1203.4a. The dissent's reference to "the limited nature of the relief provided by section 1203.4a" is thus misleading. Dissent at 4286.

at 1137-38; and (4) he received relief under a state rehabilitative statute.

**[11]** Ramirez-Altamirano meets each of the first three requirements, placing him in exactly the position of federal defendants eligible for relief under the FFOA.[9] He also has been granted relief under a state rehabilitative statute. Ramirez-Altamirano was "released from all penalties and disabilities resulting from the offense of which he . . . [was] convicted." Cal. Penal Code §§ 1203.4(a), 1203.4a(a). Because the minimal, residual consequences of his conviction under state law are not relevant here, the IJ erred in denying Ramirez-Altamirano's application on that ground. Ramirez-Altamirano is thus entitled to relief under *Lujan-Armendariz*, unless his five-day jail sentence would have precluded him from qualifying for expungement under the FFOA. Because the BIA has not yet considered this issue, we do not decide it here.

## IV. CONCLUSION

Ramirez-Altamirano's set-aside conviction for possession of drug paraphernalia, which has been expunged, does not bar his relief under *Lujan-Armendariz*. The IJ and the BIA therefore erred in finding Ramirez-Altamirano statutorily ineligible for cancellation of removal on the basis of that conviction and in finding that the conviction terminated the accrual of his "continuous physical presence" in the United States. Accordingly, we grant the instant petition and remand to the BIA. On remand, the BIA should consider whether Ramirez-

---

[9]The government mistakenly argues that to be eligible for relief under the FFOA, one also must be under twenty-one years old at the time of the offense. In making this argument, the government conflates the general deferred adjudication provision in 18 U.S.C. § 3607(a) with the special provision for expunging youthful offenders' *arrests* in § 3607(c). *See Matter of Manrique*, 21 I. & N. Dec. at 61 n.4; *cf. Paredes-Urrestarazu*, 36 F.3d at 812 (considering § 3607(c)'s age cutoff where the petitioner was challenging the IJ's consideration of the circumstances of a prior arrest).

Altamirano qualifies for relief under *Lujan-Armendariz* even though he received a jail sentence, as opposed to probation. The BIA also should consider whether Ramirez-Altamirano is otherwise eligible for relief, and, if so, should exercise its discretion to determine whether to grant the requested relief.

**PETITION GRANTED; REMANDED for further proceedings.**

---

IKUTA, Circuit Judge, dissenting:

The majority holds that an alien convicted of the state offense of possession of drug paraphernalia and given limited relief under a state expungement scheme does not have a "conviction" for purposes of determining whether an alien is inadmissible under 8 U.S.C. § 1182(a)(2) or deportable under 8 U.S.C. § 1227(a)(2). According to the majority, the Equal Protection Clause compels this ruling, because aliens convicted of certain federal drug crimes expunged under the Federal First Offender Act (FFOA) do not have a "conviction" for purposes of determining inadmissibility or deportability under §§ 1182(a)(2) and 1227(a)(2). The majority is wrong. The Equal Protection Clause does not compel us to invalidate a distinction between aliens who receive relief under the FFOA and aliens who receive relief under state law, because "[d]istinctions between different classes of aliens in the immigration context are subject to rational basis review and must be upheld if they are rationally related to a legitimate government purpose." *Aguilera-Montero v. Mukasey*, 548 F.3d 1248, 1252 (9th Cir. 2008) (quoting *Avila-Sanchez v. Mukasey*, 509 F.3d 1037, 1041 (9th Cir. 2007)). Before we may invalidate such a distinction, it must "be wholly irrational." *Id.* (quoting *de Martinez v. Ashcroft*, 374 F.3d 759, 764 (9th Cir. 2004). Here, there is a rational reason to distinguish between aliens whose convictions are expunged under the FFOA and those

who obtain limited relief under the sort of state scheme at issue in this case. I therefore respectfully dissent.

## I

The Immigration and Nationality Act authorizes the Attorney General to cancel removal of a qualified alien who is inadmissible to, or deportable from, the United States. 8 U.S.C. § 1229b. To be eligible for this relief, an alien must, among other things, not have a conviction for a drug-related offense, as defined in 8 U.S.C. § 1182(a)(2) and 8 U.S.C. § 1227(a)(2). *See* 8 U.S.C. § 1229b(b)(1)(C). Under the INA definition of conviction, an alien has a "conviction" whether or not the alien's sentence is subsequently expunged. *See* 8 U.S.C. § 1101(a)(48)(A). Yet, beginning with our 1994 decision in *Garberding v. INS*, 30 F.3d 1187 (9th Cir. 1994), we have step-by-step rewritten the definition of "conviction" for purposes of immigration law. Previous cases detail this process, *see, e.g., Chavez-Perez v. Ashcroft*, 386 F.3d 1284, 1287-90 (9th Cir. 2004), *Lujan-Armendariz v. INS*, 222 F.3d 728, 734-43 (9th Cir. 2000), but a brief review is necessary to understand why, even in light of existing precedent, the majority now extends our equal protection jurisprudence too far.

## A

Section 241(a)(11) of the Immigration and Nationality Act of 1952, 66 Stat. 204, codified at 8 U.S.C. 1251(a)(11) (1952), provided that any alien "convicted of a violation of, or a conspiracy to violate, any law or regulation relating to the illicit possession of or traffic in narcotic drugs" or other drug crimes was subject to deportation upon order of the Attorney General. *Matter of A-F-*, 8 I. & N. Dec. 429, 441 (1959) (Att'y Gen.). At that time, the Act did not define the words "convicted" or "conviction." In 1959, the Attorney General took the position that, given the "continuing and serious Federal concern" regarding drug trafficking, "Congress did not

intend that aliens convicted of narcotic violations should escape deportation because, as in California, the State affords a procedure authorizing a technical erasure of the conviction." *Id.* at 445.

In 1970, Congress enacted the FFOA to provide relief for persons convicted of simple possession of a controlled substance as a first offense. In consideration of this enactment, the BIA held that a conviction expunged under the FFOA or "under a state law which is the counterpart" of the FFOA could not serve as the basis for deportation. *Matter of Werk*, 16 I. & N. Dec. 234, 236 (BIA 1977). In a subsequent decision regarding the effect of a Maryland expungement statute, the BIA clarified the meaning of "state law counterpart" by holding that "if a statute applies to offenders of more serious drug violations, it will not be considered to be the state equivalent to the [FFOA]." *Matter of Deris*, 20 I. & N. Dec. 5, 10 (BIA 1989). In light of this determination, the BIA held that, because the Maryland expungement statute at issue covered persons guilty of controlled substance offenses that were more serious than simple possession, it did not qualify as a state counterpart. *Id.* at 11.

In *Garberding*, 30 F.3d at 1190, we rejected this conclusion on equal protection grounds. In that case, the petitioner pleaded guilty to a charge of marijuana possession under Montana law, but was allowed to withdraw her guilty plea and have her charge dismissed under Montana's expungement statute. Because a range of more serious offenses was eligible for expungement, the BIA held that the Montana statute was not an exact counterpart of the FFOA, and thus the petitioner was deportable. *Id.* at 1188. The government contended that this distinction was rational "because of the differing goals and results that obtain under the Federal First Offender statute, as opposed to broader state expunction remedies," *id.* at 1190 (internal quotation marks omitted), and because "its policy of requiring an exact state counterpart effects a consistent Congressional policy to deal harshly with drug offenders

under the immigration laws [and] to deal strictly with aliens who violate laws governing controlled substances." *Id.* (internal quotation marks omitted) (alterations in original). We disagreed, concluding that "distinguishing Garberding for deportation because of the breadth of Montana's expungement statute, not because of what she did, has no logical relation to the fair administration of the immigration laws." *Id.* at 1191. Unable to discern a rational basis for distinguishing between a federal and state expungement scheme (notwithstanding the reason offered by the government), we held that the order for Garberding's deportation violated her right to equal protection under the Constitution. *Garberding*, 30 F.3d at 1190-91.

Following *Garberding*, the BIA reexamined its position and held that "an alien who has been accorded rehabilitative treatment under a state statute will not be deported if he establishes that he would have been eligible for federal first offender treatment under the provisions of 18 U.S.C. § 3607(a) (1988) had he been prosecuted under federal law." *Matter of Manrique*, 21 I. & N. Dec. 58, 64 (1995). A year after *Manrique*, however, Congress enacted the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), which substantially amended the INA. Among other changes, Congress provided a statutory definition of "conviction":

> The term "conviction" means, with respect to an alien, a formal judgment of guilt of the alien entered by a court or, if adjudication of guilt has been withheld, where—
>
> (i)   a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and

(ii) the judge has ordered some form of punish-
ment, penalty, or restraint on the alien's liberty to be
imposed.

8 U.S.C. § 1101(a)(48)(A). As the plain language of this sec-
tion makes clear, an alien who is found guilty, or pleads
guilty, and is subject to a penalty ordered by the court, is con-
sidered convicted for purposes of immigration law. In light of
this new definition, the BIA reexamined its treatment of state
expungement statutes and held that the decision in *Manrique*
was superseded by IIRIRA:

> We therefore interpret the new definition to provide
> that an alien is considered convicted for immigration
> purposes upon the initial satisfaction of the require-
> ments of section 101(a)(48)(A) of the Act, and that
> he remains convicted notwithstanding a subsequent
> state action purporting to erase all evidence of the
> original determination of guilt through a rehabilita-
> tive procedure.

*Matter of Roldan-Santoyo*, 22 I. & N. Dec. 512, 523 (BIA
1999).

But in *Lujan-Armendariz*, we rejected the BIA's reasoning.
There, a petitioner convicted of attempted possession of
cocaine challenged the BIA's determination of deportability
under 8 U.S.C. § 1227(a)(2)(B) (a successor to section
241(a)(11) of the INA)[1] after Arizona vacated his conviction
and dismissed the charges pursuant to an expungement stat-
ute. 222 F.3d at 733. Our disagreement with the BIA was
based on a two-step analysis. First, after reasoning that Con-

---

[1]8 U.S.C. § 1227(a)(2)(B)(i) provides, in pertinent part, that:

Any alien who at any time after admission has been convicted of
a violation of (or a conspiracy or attempt to violate) any law or
regulation of a State, the United States, or a foreign country relat-
ing to a controlled substance . . . is deportable.

gress's definition of "conviction" in 18 U.S.C. § 1101(a)(48)(A) did not repeal by implication the protection afforded by the FFOA to first offenders, namely, that a § 3607(a) disposition "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose," *id.* at 744 (citing 18 U.S.C. § 3607(b)), we construed the FFOA as carving out an exception to the definition of "conviction" in § 1101(a)(48)(A). *Id.* at 745. Second, because a conviction that qualified for expungement under the FFOA would not count as a conviction for purposes of 8 U.S.C. § 1227(a)(2)(B), we held that the principles of equal protection required "the benefits of the Act be extended to aliens whose offenses are expunged under state rehabilitative laws, provided that they would have been eligible for relief under the Act had their offenses been prosecuted as federal crimes." *Lujan-Armendariz*, 222 F.3d at 749. We stated, "there is no rational basis for a federal statute that treats persons adjudged guilty of a drug offense under state law more harshly than persons adjudged guilty of the identical offense under federal law." *Id.*

Our subsequent decision in *Cardenas-Uriarte v. INS*, 227 F.3d 1132 (9th Cir. 2000) extended *Lujan-Armendariz* further. In *Cardenas-Uriarte*, we rejected the BIA's determination that a petitioner who had been convicted of possession of drug paraphernalia under Arizona law, and subsequently had his conviction expunged under a state scheme, was deportable under 8 U.S.C § 1227(a)(2)(B)(i) for having committed a crime relating to a controlled substance. *Id.* at 1137-38. Although the first step of the *Lujan-Armendariz* analysis required the petitioner to have been "adjudged guilty of the identical offense under federal law," 222 F.3d at 749, we bypassed this "identical offense" requirement. Instead, we inferred that Congress would have intended that a conviction for possession of drug paraphernalia should be included under the FFOA when it is "a less serious offense than simple possession of a controlled substance." *Cardenas-Uriarte*, 227

F.3d at 1137. From there, we determined that the equal protection analysis in *Lujan-Armendariz* applied even though petitioner's offense was not an offense that could have qualified for relief under the FFOA. *Id.* at 1137-38.

In sum, before the decision today, an alien did not have a "conviction" for immigration purposes if: (1) "adjudged guilty" of a state crime that was identical to an offense under federal law, *Lujan-Armendariz*, 222 F.3d at 749, or of the state offense of possession of drug paraphernalia, *Cardenas-Uriarte*, 227 F.3d at 1137; (2) the offense was expunged under state law; and (3) the alien would have qualified for and received expungement of this offense under the FFOA had it been prosecuted as a federal crime, *Lujan-Armendariz*, 222 F.3d at 749.

B

The BIA rejected the *Lujan-Armendariz* analysis. *See Matter of Salazar-Regino*, 23 I. & N. Dec. 223 (2002) (concluding that, "except in the Ninth Circuit, a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under section 101(a)(48)(A) of the Act").

In *Acosta v. Ashcroft*, the Third Circuit also rejected our approach. 341 F.3d 218 (3rd Cir. 2003). In that case, a petitioner pleaded nolo contendere to a charge of heroin possession in violation of Pennsylvania law. *Id.* at 220. The state court placed him on probation, and subsequently dismissed the charges against him without an adjudication of guilt. After the BIA ruled that the proceeding constituted a "conviction" for immigration purposes, the petitioner argued for an exception to the definition of "conviction" based on equal protection principles, as interpreted in *Lujan-Armendariz*. *Id.* at 224. Judge (now Justice) Alito rejected the petitioner's argument. Noting that "[u]nder rational-basis review, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide

a rational basis for the classification," *id.* at 226-27 (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)), the Third Circuit concluded:

> [W]e can easily see a rational basis for a distinction between aliens whose criminal cases are dismissed under the federal FFOA and those whose charges are handled under similar state schemes. Familiar with the operation of the federal criminal justice system, Congress could have thought that aliens whose federal charges are dismissed under the FFOA are unlikely to present a substantial threat of committing subsequent serious crimes. By contrast, Congress may have been unfamiliar with the operation of state schemes that resemble the FFOA. Congress could have worried that state criminal justice systems, under the pressure created by heavy case loads, might permit dangerous offenders to plead down to simple possession charges and take advantage of those state schemes to escape what is considered a conviction under state law. Particularly in view of Congress's power in immigration matters, it seems plain that rational-basis review is satisfied here. As the Supreme Court recently noted, "[i]n the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510 (2003).

341 F.3d 218, 227 (3rd Cir. 2003).

Other circuits that have considered the effect of IIRIRA's definition of "conviction" have likewise rejected our approach. *See Madriz-Alvarado v. Ashcroft*, 383 F.3d 321, 332 (5th Cir. 2004) (rejecting *Lujan-Armendariz*'s equal protection analysis "as have all the courts of appeals which have considered it," and stating that an equal protection challenge based on the FFOA "is without merit"); *Resendiz-Alcaraz v.*

*U.S. Att'y Gen.*, 383 F.3d 1262, 1272 (11th Cir. 2004) (rejecting *Lujan-Armendariz*'s equal protection analysis because "a rational basis exists for distinguishing between aliens whose charges are dismissed under the FFOA and those whose charges are dismissed under state rehabilitative statutes"); *Elkins v. Comfort*, 392 F.3d 1159, 1163-64 (10th Cir. 2004) (noting the "prevailing view in other circuits" that "there is a rational basis for distinguishing even state-court dispositions from those under the FFOA," and holding there is a rational basis for denying a petitioner convicted under Korean law the benefit of the FFOA); *Gill v. Ashcroft*, 335 F.3d 574, 577-78 (7th Cir. 2003) (rejecting *Lujan-Armendariz's* analysis and noting that every other court that has considered the subject has concluded that state law expungements "do not negate a 'conviction' for purposes of immigration law"); *see also Vasquez-Velezmoro v. INS*, 281 F.3d 693, 697 (8th Cir. 2002) (declining to adopt the holding and reasoning of *Lujan-Armendariz*, but concluding that petitioner's equal protection claim failed because the petitioner was not similarly situated to a person eligible for FFOA treatment); *Herrera-Inirio v. INS*, 208 F.3d 299, 309 (1st Cir. 2000) (holding that § 1101(a)(48)(A) passes rational basis review in the context of a substantive due process challenge because it advances "the government's need for a nationally uniform definition of the term 'conviction' for immigration purposes").

　　More important, our approach in *Lujan-Armendariz* is inconsistent with our en banc decision in *Abebe v. Mukasey*, ___F.3d___, 2009 WL 50120 (9th Cir. 2009) (en banc) (per curiam). In that case, we noted that "Congress has particularly broad and sweeping powers when it comes to immigration, and is therefore entitled to an additional measure of deference when it legislates as to admission, exclusion, removal, naturalization or other matters pertaining to aliens." *Abebe*, 2009 WL 50120, at *2. Once we identify "a rational reason Congress may have had in adopting [the law]," our analysis must end. *Id*. This conclusion is consistent with direction from the Supreme Court. In determining whether a federal classifica-

tion "allowing benefits to some aliens but not to others is permissible," we must not "substitute our judgment for that of Congress." *Mathews v. Diaz*, 96 S. Ct. 1883, 1892, 1893 (1976); *see also F.C.C. v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993) ("Whether embodied in the Fourteenth Amendment or inferred from the Fifth, equal protection is not a license for courts to judge the wisdom, fairness, or logic of legislative choices. In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification."). Here, as *Acosta* and the decisions from other circuits make clear, it is easy to identify a rational reason for making "a distinction between aliens whose criminal cases are dismissed under the federal FFOA and those whose charges are handled under similar state schemes." *Acosta*, 341 F.3d at 227. Accordingly, our en banc decision in *Abebe* and the Supreme Court's equal protection jurisprudence counsel that we revisit *Lujan-Armendariz*, not that we extend further its erroneous determination that the Equal Protection Clause compels us to exclude from the definition of "conviction" in 8 U.S.C. § 1101(a)(48)(A) certain state drug convictions expunged under state law.

## II

But even if we do not revisit our equal protection analysis, which has roamed far from the standards set by the Supreme Court, I would conclude that Ramirez is not entitled to immigration relief under either our case law or the Equal Protection Clause. The basis for this conclusion is straightforward: Ramirez simply did not obtain relief analogous to that provided by the FFOA.

In 1993, Ramirez was convicted under section 11364 of the California Health and Safety Code for possession of drug paraphernalia and was sentenced to five days in jail. Ramirez

was subsequently granted relief under section 1203.4a of the California Penal Code,[2] which provides that a defendant convicted of a misdemeanor and not granted probation can "be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in section 12021.1 of this code or section 13555 of the Vehicle Code."[3] Cal. Pen. Code § 1203.4a(a). In granting Ramirez such relief, the state court imposed additional restrictions, stating: "[T]his order does not relieve the defendant of the obligation to disclose this conviction in response to any direct question contained in any questionnaire or application for public office, for licensure by any state o[r] local agency, or for contracting with the California State Lottery."

In his hearing before the immigration judge (IJ), Ramirez sought relief in the form of cancellation of removal under 8 U.S.C. § 1229b(b). The IJ held that Ramirez did not qualify

---

[2]Although the caption of the court order granting relief refers to "order dismissing accusation against probationer," the reference to Ramirez as probationer appears to be a scrivener's error. The court order otherwise correctly references section 1203.4a, and relief was granted under section 1203.4a. Section 1203.4a of the California Penal Code allows limited expungement for a defendant convicted of a misdemeanor and not granted probation, while section 1203.4 of the California Penal Code allows limited expungement for a defendant who has fulfilled the conditions of probation. Because Ramirez was sentenced to jail time, not probation, the court would be authorized to grant relief only under section 1203.4a.

[3]Section 12021.1 of the California Penal Code provides that it is a felony for persons convicted for certain violent crimes to own or possess a firearm, notwithstanding whether the person received relief under section 1203.4a. Section 13555 of the California Vehicle Code provides:

> A termination of probation and dismissal of charges pursuant to Section 1203.4 or a dismissal of charges pursuant to Section 1203.4a of the Penal Code does not affect any revocation or suspension of the privilege of the person convicted to drive a motor vehicle under this chapter. Such person's prior conviction shall be considered a conviction for the purpose of revoking or suspending or otherwise limiting such privilege on the ground of two or more convictions.

for this form of relief because his state conviction "still exists for Immigration purposes." The IJ noted that the state court's order granting Ramirez a remedy under section 1203.4a "shows that even for the State of California, the respondent has a conviction, at least for disclosing it for public office, of seeking [sic] a license by any State or local agency, and for even contracting with the California State lottery." The BIA affirmed, holding that "the respondent failed to demonstrate statutory eligibility for cancellation of removal," because he failed to carry his burden of demonstrating "he could have satisfied the requirements of the [FFOA] under 18 U.S.C. § 3607."

In analyzing Ramirez's appeal of the BIA's denial under the three-prong *Lujan-Armendariz* test, we first consider whether Ramirez was "adjudged guilty" of an offense that was identical to an offense under federal law. *Lujan-Armendariz*, 222 F.3d at 749. The answer to this question is no. Ramirez was not adjudged guilty of a drug-related offense that would qualify for FFOA expungement. Our case law, however (as noted above), requires us to conclude that Ramirez's conviction for the state offense of possession of drug paraphernalia satisfies this prong of the test. *See Cardenas-Uriarate*, 227 F.3d at 1137-38.

Skipping ahead for a moment, a similar result occurs under the third prong of the test, which addresses the question whether the alien would have qualified for and received expungement of the offense under the FFOA. *See Lujan-Armendariz*, 222 F.3d at 749. Here, the answer is also no. The FFOA applies only to defendants who have received a term of probation of not more than one year, 18 U.S.C. § 3607(a); Ramirez received jail time. Three circuits have held there is a rational basis to distinguish between aliens who receive different sentences. *See Fernandez-Bernal v. Att'y Gen.*, 257 F.3d 1304, 1317 (11th Cir. 2001) (holding it does not violate equal protection to treat an alien who is sentenced to two years of probation and a term of jail differently than an alien

receiving FFOA relief); *Vasquez-Velezmoro*, 281 F.3d at 697 (holding that a person sentenced to ten years probation by a Texas court would not be eligible for FFOA relief, and "[t]his difference in sentences is a rational basis for treating petitioner differently from an alien whose conviction is expunged under the FFOA."); *Elkins*, 392 F.3d at 1163 (10th Cir. 2004) (holding that there is a rational basis for denying petitioner the benefits of the FFOA in an immigration proceeding because petitioner was subject to a two-year suspension of sentence, rather than probation). In *Lujan-Armendariz*, we expressly left this issue open. *Lujan-Armendariz*, 222 F.3d at 738 n.18 (holding that, because the petitioner in that case was sentenced only to probation, we did not need to decide whether a person subject to imprisonment could qualify for relief). Ramirez fails to meet the requirement of the third prong of the *Lujan-Armendariz* test. This deficiency is not relevant to our analysis, however, because the BIA did not rely on this ground in rejecting Ramirez's appeal. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (holding that, in reviewing the BIA's decision, we may rely only on the grounds relied upon by the BIA).

Thus, the analysis turns on the second prong of the *Lujan-Armendariz* test, which requires expungement of an offense under state law.[4] *Lujan-Armendariz*, 222 F.3d at 749. Yet,

---

[4]The majority notes that in *Lujan-Armendariz*, the state expungement statute did not relieve defendants of all residual consequences of their convictions. Specifically, the expungement statute precluded relief, in certain cases, from various department of transportation and game and fish commission penalties. *Lujan-Armendariz* did not discuss this aspect of the state expungement statute, stating only that the statute's exceptions to "the release 'from all penalties and disabilities' " were "not relevant here." 222 F.3d at 733 n.6. Nor does *Lujan-Armendariz* explain why the difference between the limited relief provided by the Arizona expungement statute and the full relief provided by the FFOA failed to provide a rational basis for distinguishing "between aliens whose criminal cases are dismissed under the federal FFOA and those whose charges are handled under similar state schemes." *Acosta*, 341 F.3d at 227. Nevertheless, the situation in

Ramirez cannot pass this test. A person receiving relief under section 1203.4a of the California Penal Code does not benefit from a full expungement, but rather, depending on the circumstances, retains the consequences of his conviction in important contexts, potentially implicating rights such as eligibility for a driver's license, application for public office, receipt of a license from a local agency, and possession of a firearm, *see District of Columbia v. Heller*, 554 U.S. ___ (2008) (holding that the Second Amendment protects an individual's right to possess a firearm for private use). There is no principled basis for concluding it is irrational to distinguish between the limited state rehabilitation statute in this case and the FFOA, which provides that a disposition under § 3607(a) "shall not be considered a conviction for the purpose of a disqualification or a disability imposed by law upon conviction of a crime, or for any other purpose." 18 U.S.C. § 3607(b).

The majority reaches the opposite conclusion for two reasons. First, the majority claims that section 1203.4 expungement is equivalent to an expungement under the FFOA because the exceptions to relief under section 1203.4a are narrow, minimal, and residual. Maj. Op. at 4263-64, 4267. This conclusion is contrary to our reasoning in *Ramirez-Castro v. INS,* 287 F.3d 1172 (9th Cir. 2002). In *Ramirez-Castro*, a petitioner sought to terminate deportation proceedings on the ground that his prior firearms conviction had been expunged under section 1203.4(a), a statute similar to section 1203.4a.[5]

---

this case is different. As explained below, section 1203.4a provides less relief than the expungement statute at issue in *Lujan-Armendariz*, including depriving certain convicts of a constitutional right. And unlike the petitioner in *Lujan-Armendariz*, who apparently was not subject to residual consequences, Ramirez himself was subject to residual consequences.

[5]Section 1203.4(a) (the statute at issue in *Ramirez-Castro*) states that after expungement, a defendant "shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 13555 of the Vehicle Code." Cal. Pen. Code § 1203.4(a).

We stated that "as a general rule, an expunged conviction qualifies as a conviction" for purposes of § 1101(a)(48)(A), but noted that we had carved out an exception to this general rule "in cases involving first-time simple possession of narcotics." 287 F.3d at 1174. After determining that the petitioner's firearms conviction was not within the scope of the FFOA, we went on to consider petitioner's argument that his prior conviction had been erased for immigration purposes because it had been expunged under section 1203.4. We rejected petitioner's argument, explaining that even "assuming that some state expungement statutes could eliminate completely the immigration consequences of a state conviction, California Penal Code section 1203.4 is not such a statute." *Id.* at 1175 (footnote omitted). In this context, we found it significant that a defendant retained the consequences of a conviction imposed by section 13555 of the California Vehicle Code even after a conviction is expunged under section 1203.4. Accordingly, we concluded that "[i]n view of the fact that California Penal Code section 1203.4(a) provides only a limited expungement even under state law, it is reasonable for the BIA to conclude that a conviction expunged under that provision remains a conviction for purposes of federal law." *Id.* Because *Ramirez-Castro* involved a firearm conviction, we did not have to address the question whether a first-time drug conviction expunged under section 1203.4 was analogous to a first-time drug conviction expunged under the FFOA. However, our holding in *Ramirez-Castro* indicates that the even more limited expungement in our case is not equivalent to the FFOA's full expungement.

Second, the majority claims that *Lujan-Armendariz*'s second prong is met because the scope of relief provided by a

---

Section 1203.4a(a) (the statute at issue here) states that after expungement, a defendant "shall thereafter be released from all penalties and disabilities resulting from the offense of which he or she has been convicted, except as provided in Section 12021.1 of this code or Section 13555 of the Vehicle Code." Cal. Pen. Code § 1203.4a(a).

state expungement statute is less important than whether the petitioner would qualify for FFOA relief at all. Maj. Op. at 4263 ("the critical question is not the nature of the state's expungement statute but rather 'what [the petitioner] did.' ") (citing *Lujan-Armendariz*, 222 F.3d at 738 n.18) (alteration in original)). In support, the majority points out that in several prior decisions we required the BIA to grant immigration relief to petitioners receiving relief under state rehabilitative laws even though the state laws at issue did not provide complete expungement. Maj. Op. at 4265.

Again, I disagree. The three cases cited by the majority to buttress this proposition are inapposite, because in none of them did we consider or even mention the extent to which the state expungement scheme removed the consequences of a conviction. For example, *Garberding* is entirely silent on the scope of the state statute, and did not even quote the section of the Montana statute cited by the majority. *See Garberding*, 30 F.3d at 1187; *see also Cardenas-Uriarte*, 227 F.3d at 1138 (mentioning that the petitioner's conviction was expunged by section 13-907 of the Arizona Revised Code, which allowed convictions under the statute to be used as a conviction "in any subsequent prosecution of such person by the state or any of its subdivisions for any offense," but only to assure ourselves that the petitioner had not been convicted of another controlled substance offense in Arizona). When we did address the scope of the expungement provided by a state expungement statute, *see Ramirez-Castro*, we determined it was not sufficient to erase the immigration consequences of the crime.

I also disagree with the majority's suggestion that the scope of relief provided by the state statute is irrelevant. The question under our equal protection jurisprudence is whether there is a rational basis for distinguishing aliens receiving relief under the FFOA from aliens receiving relief under the state rehabilitation test. A state's decision to completely rehabilitate a convict reflects its assessment that a person has

reformed and should be given a fresh start. A rehabilitation statute that provides only partial or limited relief reflects a different determination. Although the majority cites *Lujan-Armendariz*, 222 F.3d at 738 n.18, for the proposition that "the critical issue is not the nature of the state's expungement statute but rather what the petitioner did," Maj. Op. at 4259, we made this statement in connection with our conclusion that the difference between a deferred adjudication of guilty in the FFOA and the vacatur provided by the Arizona statute at issue in *Lujan-Armendariz* was irrelevant. *See Lujan-Armendariz*, 222 F.3d at 738 n.18. It does not support the majority's claim that the scope of relief provided by a state expungement statute is irrelevant.

In this case, the limited nature of the relief provided by section 1203.4a of the California Penal Code makes it "reasonable for the BIA to conclude that a conviction expunged under [such a] provision remains a conviction for purposes of federal law." *Ramirez-Castro*, 287 F.3d at 1175 (examining the similar language in section 1203.4(a) of the California Penal Code). Because there is a rational basis to distinguish between Ramirez and a person who receives full expungement under the FFOA, the BIA's determination that Ramirez had a conviction for purposes of § 1182(a)(2) and § 1227(a)(2), and therefore could not qualify for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C), did not violate Ramirez's equal protection rights.

III

Our prior decisions have led us, step by step, to the conclusion that Congress could have no rational reason for treating the expungement offered under the FFOA to certain first offenders convicted for certain federal drug crimes differently from a more limited expungement offered under state law to persons convicted for different state drug crimes. Clearly, we have traveled far from our main task of determining, "not whether the statutory scheme makes sense to us, but whether

we can conceive of a rational reason Congress may have had in adopting it." *Abebe*, 2009 WL 50120 at *2. By holding that aliens receiving even limited relief under a state rehabilitation statute must be treated the same as first offenders whose convictions are expunged by the FFOA, the majority today further strains our equal protection jurisprudence and takes yet another step in rewriting the definition of "conviction" in 8 U.S.C. § 1101(a)(48)(A). I respectfully dissent.